## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN J. WILLIAMS, | ) | |
| *Plaintiff*, | ) | |
| | ) | 3:22-cv-1630 (SVN) |
| v. | ) | |
| | ) | |
| DARYL NORVAL SMITH, FEDERAL | ) | |
| AVIATION ADMINISTRATION, | ) | |
| NICHOLAS ALBERT EULL, MICHAEL | ) | |
| GORDON WHITAKER,[1] | ) | |
| DEPARTMENT OF MOTOR VEHICLES, | ) | |
| ANTONIO TONY GUERRERA, EILEEN | ) | |
| MESKILL, RONALD DANTE | ) | |
| FONTENOT, JANE & JOHN DOES, | ) | July 3, 2024 |
| *Defendants*. | ) | |

## RULING ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Sarala V. Nagala, United States District Judge.

Plaintiff Stephen J. Williams, proceeding *pro se*, seeks to become a certified flight instructor, but has been unable to do so because he lacks a valid driver's license and has been unable to take a prerequisite practical test. In essence, Plaintiff claims the unpaid fine over which his Connecticut driver's license is held in suspension has expired, and failure to lift the suspension has deprived him of due process in violation of 42 U.S.C. § 1983; that the Federal Aviation Administration ("FAA") has unreasonably delayed the administration of his practical test, in violation of the Administrative Procedures Act, 5 U.S.C. § 555 (the "APA"), causing certain eligibility requirements he held to expire; and that several documents issued by the FAA related

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Elbert Matthew Bush and Polly Ellen Trottenberg are replaced with Nicholas Albert Eull and Michael Gordon Whitaker, respectively, as public officers sued in their official capacities who have ceased to hold the relevant office while this action is pending.

to flight instruction represent substantive rule changes that are invalid for failure to undergo notice and comment rulemaking, as required by the APA, 5 U.S.C. § 551.

Plaintiff has sued the Connecticut Department of Motor Vehicles ("DMV"), as well as DMV Commissioner Antonio Guerrera and Deputy Attorney General Eileen Meskill in their official capacities (the "Connecticut Defendants"). He has also sued the FAA and the following individuals in their official capacities: Flight Standards Manager Elbert Matthew Bush (replaced by Nicholas Albert Eull), Acting Administrator Polly Ellen Trottenberg (replaced by Michael Gordon Whitaker), and Acting Manager of the Special Aircraft Examiner Branch Ronald Dante Fontenot (the "Federal Defendants").

All of these Defendants have moved to dismiss Plaintiff's fourth amended complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF Nos. 116 (Connecticut Defendants), 150 (Federal Defendants). For the following reasons, the Connecticut Defendants' and Federal Defendants' motions to dismiss are GRANTED. Plaintiff's motion for leave to amend, ECF No. 196, is DENIED, though the Court will grant him one additional opportunity to state a plausible First Amendment claim against the Federal Defendants.

## I.  FACTUAL BACKGROUND

The Court accepts all of Plaintiff's factual allegations as true for purposes of deciding Defendants' motions to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also takes judicial notice of relevant state court documents as public records. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

This story begins on March 30, 2004, when Plaintiff was stopped for speeding on a Connecticut roadway and served with an infraction complaint. FAC, ECF No. 93 ¶ 102. Plaintiff

alleges he was not provided notice of the hearing on the infraction, and that the case was closed in November of 2004.  *Id.* ¶ 103.  Following the closure, the Commissioner of the DMV issued a notice suspending Plaintiff's driving privileges.  *Id.*  Plaintiff later moved to reopen the proceedings; in proceedings before the DMV of which the Court takes judicial notice, *see Dixon v. von Blanckensee*, 994 F.3d 95, 101–03 (2d Cir. 2021), Plaintiff has asserted that the notice of hearing was sent by the DMV to the wrong address, but that he became aware of the proceedings in 2005 and had appeared for every hearing since.  Dec. 7, 2016, DMV Hearing Tr. 5:14–6:3.[2]  After a bench trial was eventually held on October 28, 2005, Plaintiff was convicted of speeding in violation of Conn. Gen. Stat. § 14-219 in Connecticut Superior Court and sentenced to a fine of $148 plus fees and costs.  *See* FAC ¶ 104; Commissioner's Br. to Conn. App. Court, ECF No. 158-2 at 8.  At the time, Plaintiff was a licensed lawyer, though he was later temporarily suspended as a result of his actions concerning his litigation of the speeding ticket.  *In re Williams*, 978 F. Supp. 2d 123, 132 (D. Conn. 2012); FAC ¶ 108.

About ten years later, Plaintiff moved to vacate the speeding ticket sentence, and his motion was granted.  FAC ¶¶ 105–06.  Plaintiff was re-sentenced on April 10, 2015, and ordered to pay a $35.00 fine, plus fees and costs.  *Id.* ¶ 107; *see also* March 8, 2017, Letter from Hearing Officer Chadwick, at 14[3]; Superior Court Mem. of Decision dated June 5, 2018, ECF No. 158-5 at 2. Plaintiff appealed the resentencing decision; that appeal was later dismissed.  FAC ¶¶ 108, 110. Plaintiff paid neither the imposed fine of $35.00 nor the restoration fee of $175.00.  *See* Conn. Gen. Stat. § 14-50b(a); June 5, 2018, Superior Court Mem. of Decision, ECF No. 158-5 at 2.

---

[2] Available starting on page 66 at
https://appellateinquiry.jud.ct.gov/DocumentDisplayer.aspx?AppId=2&DocId=vslADcGnz6SJV1dbgIFE8Q%3d%3d (last visited July 3, 2024).
[3] This document is available at the same link provided in footnote two starting at page 12.

Between May 11, 2015, and August 29, 2016, clerks "closed out" the case pursuant to Conn. Gen. Stat. § 14-140 and requested that the Commissioner of the DMV send Plaintiff notices that his driving privileges would be suspended.[4]   FAC ¶¶ 109–10.   On August 29, 2016, the Commissioner issued a third notice suspending Plaintiff's driving privileges.   *Id.* ¶ 110.   Plaintiff challenged the suspension in an administrative appeal, and the suspension of his driving privileges was affirmed for failure to pay the fine imposed at the April 10, 2015, sentencing.   *See id.* ¶ 111; *see also* March 8, 2017, Letter from Hearing Officer Chadwick.

In the years since, Plaintiff, who is already a commercial pilot and certified *ground* instructor, has endeavored to become a certified *flight* instructor with a glider rating.   FAC ¶ 22. This requires the taking of a practical flight test administered by the FAA.   *Id.* ¶ 1.   As of October 15, 2022, Plaintiff had met all the eligibility requirements to take the practical test.   *Id.* ¶ 40. Plaintiff had even earned a scholarship from two nonprofit organizations toward his expenses for obtaining the certification.   *Id.* ¶¶ 36–38.   There were significant delays in scheduling the practical flight test, however.   *Id.* ¶¶ 38–51.   Former Defendant Daryl Norval Smith, who was delegated the authority to conduct the test, stated that the earliest Plaintiff could take the test was in January or February of 2023, though winter weather conditions would make administering the test in those months difficult.   *Id.* ¶¶ 23, 41.   In the meantime, one of Plaintiff's prerequisites to take the test, a logbook endorsement, expired on December 31, 2022.   *Id.* ¶ 48.   A second of Plaintiff's prerequisites, a knowledge test report, expired on July 31, 2023.   *Id.* ¶ 49.

The FAA also generally requires that certified flight instructors hold a medical certificate, which Plaintiff no longer possesses after suffering a stroke in May of 2023.   *Id.* ¶¶ 97–99.   Now,

---

[4] While Plaintiff takes pains to distinguish between suspension of his driving *privileges* and suspension of his driver's *license*, *see* ECF No. 158 at 1–2, the suspension notice he has provided with his opposition brief states that his "MOTOR VEHICLE OPERATING PRIVILEGE/LICENSE" has been suspended. ECF No. 158-1. Nonetheless, the Court adopts Plaintiff's framing of suspension of his driving *privileges* in this ruling.

Plaintiff may only meet the medical requirements through select programs that require, at the very least, the possession of a valid driver's license—which he does not have, on account of the suspension of his driving privileges.  *Id.* ¶¶ 100, 115.

On April 22, 2022, Plaintiff emailed Anthony Famiglietti, a former lawyer for the DMV since dismissed as a Defendant in this action, inquiring about the status of his license suspension. *Id.* ¶ 112.  In response, the DMV issued a fourth notice of suspension on May 4, 2022.  *Id.*  Plaintiff emailed Famiglietti a second time on August 30, 2023, copying Defendant Deputy Attorney General Eileen Meskill, again inquiring about the status of his suspension.  *Id.* ¶ 113.  Plaintiff followed up with both Famiglietti and Defendant Meskill but received no response.  *Id.* ¶ 114.  To the best of Plaintiff's knowledge, the suspension order remains in place to date.  *Id.* ¶ 115.

## II.    PROCEDURAL BACKGROUND

The operative complaint is Plaintiff's fourth amended complaint.[5]  The Court assumes the parties' familiarity with the complicated procedural background of this case, and only recounts portions necessary to provide context for this ruling.  The presently-pending Defendants in the case are the FAA; Eull, Whitaker, and Fontenot in their official capacities; various Doe Defendant employees of the FAA; the DMV; Guerrera and Meskill in their official capacities; and various Doe Defendant employees of the DMV.  *See* FAC at 1–2.[6]

In the FAC, Plaintiff brings Counts One through Three against the Federal Defendants. First, Plaintiff seeks a declaratory judgment invalidating the following five statements by the FAA for failure to promulgate through notice and comment rulemaking under the APA, 5 U.S.C. § 551:

---

[5] Plaintiff has also filed a motion for leave to file what would be his sixth amended complaint.  ECF No. 196.  The Court addresses that motion below.

[6] Plaintiff has dismissed Defendants Carol Ceccone Carpenter, Brian Carpenter, and Smith with prejudice.  *See* ECF Nos. 165, 197.  The Court therefore considers moot the following counts:  the portion of Count Two alleged against the Carpenters; Count Four, which was alleged only against the Carpenters; and Count Six, which was alleged only against Smith.

(i) the FAA's Practical Test Standards; (ii) Airman Certification Standards; (iii) the Guide for Aviation Medical Examiners; (iv) the 2010 Gatlin legal interpretation, referring to an FAA legal interpretation letter stating ground instructors (like Plaintiff) may not use flight simulators; and (v) the 2018 Williams legal interpretation, referring to a letter restricting the teaching methods an instructor without a medical certificate (like Plaintiff) may use.  Second, Plaintiff seeks injunctive relief under the Mandamus Act, 28 U.S.C. § 1361, ordering the Federal Defendants to schedule and administer the practical test.  FAC ¶¶ 6, 120–21.  Third, Plaintiff brings a similar claim that the Federal Defendants have unduly delayed his practical test under the APA, and seeks declaratory and mandamus relief, 5 U.S.C. § 555(b), § 706(1).  FAC ¶¶ 122–24.

Plaintiff brings only Count Five against the Connecticut Defendants. *Id.* ¶¶ 127–28.  Count Five is titled "42 U.S.C. § 1983 and state law claims" and "seeks an order mandating that Defendants reinstate Plaintiff's driving privileges, enjoining Defendants from further imposing suspensions on those privileges and mandating the issuance of a Connecticut driver's license upon proper application." *Id.* ¶ 128.  Earlier in his complaint, Plaintiff references claims for violations of 42 U.S.C. §§ 1983, 1988, and the First, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, but he does not further specify the nature of these constitutional violations. *Id.* ¶ 17.

Both the Connecticut Defendants and Federal Defendants have moved to dismiss the counts directed at them.  ECF Nos. 116; 150.  Plaintiff has also moved for partial summary judgment against the Connecticut Defendants only (ECF No. 98), for a preliminary injunction against the Connecticut Defendants only (ECF No. 112), for a determination of that motion for a preliminary injunction (ECF No. 186), for leave to file a proposed sixth amended complaint (ECF No. 196), to compel discovery responses from the Connecticut Defendants (ECF No. 214), and to

lift the stay of discovery that has been entered with respect to the Federal Defendants (ECF No. 215).  The Court's holdings on Defendants' motions to dismiss and Plaintiff's motion for leave to amend in this ruling are dispositive of all of the additional pending motions.

### III.    LEGAL STANDARD

The Connecticut and Federal Defendants move to dismiss Plaintiff's FAC under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief.

A case must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) (describing how a dismissal for lack of Article III standing is a dismissal for lack of subject matter jurisdiction).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Ordinarily a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants). However, "a lawyer representing himself ordinarily receives no such special solicitude at all." *Tracy*, 623 F.3d at 102. The Second Circuit has extended this rule to disbarred and suspended attorneys, like Plaintiff.[7] *See United States v. Piece*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (summary order) (collecting Second Circuit cases); *Parent v. New York*, 485 F. App'x 500, 502–03 (2d Cir. June 18, 2012) (summary order) (denying special solicitude to suspended attorney proceeding *pro se*). The rationale for denying practicing lawyers special solicitude when they appear *pro se*—that they are "experienced in litigation and familiar with the procedural setting presented" —applies equally to disbarred or suspended attorneys. *Piece*, 649 F. App'x at 117 n.1 (quoting *Tracy*, 623 F.3d at

---

[7] Plaintiff's bar license is currently administratively suspended. *See* Conn. Judicial Branch, Attorney Firm Look-up, https://www.jud.ct.gov/attorneyfirminquiry/AttorneyFirmInquiry.aspx (last accessed July 3, 2024).

102).  Indeed, familiarity with the legal system presents a risk that such attorneys may abuse that system and unfairly take advantage of the special solicitude afforded to ordinary *pro se* litigants. The Court therefore does not afford Plaintiff the same level of special solicitude afforded other *pro se* plaintiffs, though it has continually construed his claims liberally and generously excused his failures to comply with Local Rules.

## IV.     CONNECTICUT DEFENDANTS' MOTION TO DISMISS

The Court finds that it may exercise jurisdiction over Plaintiff's claims against the individual Connecticut Defendants in their official capacity, but that Plaintiff's claims against the DMV are barred by the Eleventh Amendment.  With respect to Plaintiff's claims against the individual Connecticut Defendants, the Court holds that Plaintiff has failed to state a plausible claim for relief for restoration of his suspended license.  All of Plaintiff's claims against the Connecticut Defendants are therefore dismissed.

### A.  Rule 12(b)(1)

The Court first holds that the Eleventh Amendment bars Plaintiff's claim against the DMV, but not his request for injunctive relief brought against the individual defendants sued in their official capacity.

The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." [8]  This provision generally bars private individuals from suing states—including arms of the state and state agents acting in their official capacities—unless one of a few specific exceptions to the rule applies. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Tonina v. Conn. Dep't of Revenue Servs.*, 851 F. App'x 273, 274 (2d Cir. 2021) (summary order).  The immunity recognized by the Eleventh Amendment "extends beyond states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  State agencies qualify for the immunity.  *Woods*, 466 F.3d at 236.

There are three recognized exceptions to Eleventh Amendment immunity:  (1) when a state consents to a lawsuit; (2) when Congress revokes a state's Eleventh Amendment immunity under the enforcement provision of the Fourteenth Amendment, *see id.*; or (3) when the lawsuit seeks prospective injunctive relief against state officials—otherwise known as the *Ex parte Young* exception.  *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) (*per curiam*) (quoting *CSX Transp., Inc. v. N.Y. St. Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)); *see also Ex parte Young*, 209 U.S. 123 (1908).

Pursuant to the third exception to Eleventh Amendment immunity, "suits for *prospective relief* against an individual acting in his official capacity may be brought to end *an ongoing*

---

[8] As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'" *Mallison v. Conn. Off. of Early Childhood*, 634 F. Supp. 3d 21, 29 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020)).  *See also Allco Finance Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order).  The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court.  Recognizing the uncertainty, however, the Court dismisses Plaintiff's claim against the DMV *without* prejudice (but without leave to amend).  *See Van De Bovenkamp v. Neb. Dep't of Roads*, No. 11 Civ. 6881 (ALC) (DLF), 2012 WL 13389071, at *1 (S.D.N.Y. Mar. 16, 2012).

*violation* of federal law." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020) (emphasis added). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (declining to extend *Ex parte Young* to cases for retroactive relief). Importantly, the *Ex parte Young* exception permits the pursuit of injunctive relief only against state employees sued in their official capacity, and not against a state agency itself. *See, e.g., Woods*, 466 F.3d at 236; *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 300 (N.D.N.Y. 2019) (recognizing that the New York Department of Motor Vehicles is a state agency entitled to Eleventh Amendment immunity).

Under a straightforward application of Eleventh Amendment immunity principles, Plaintiff's section 1983 claim against the DMV fails, as the DMV is a state agency entitled to invoke the immunity, and there is no suggestion that the State has either waived its Eleventh Amendment immunity or that Congress has abrogated it in these circumstances. Nor, obviously, is the DMV a state employee sued in an official capacity, such that the *Ex parte Young* exception could apply. The DMV is therefore dismissed from this suit without prejudice.

While Plaintiff's claim against the individual Connecticut Defendants (Guerrera and Meskill) likewise does not meet the first two exceptions to Eleventh Amendment immunity, it falls under the *Ex parte Young* exception for prospective injunctive relief. Although Plaintiff certainly references past conduct by Guerrera and Meskill in his FAC, he claims that his due process rights are presently violated because the DMV continues to hold his driving privileges in indefinite

suspension.  Because this alleged injury is continuous and ongoing, his claim for injunctive relief

is prospective in nature and the Eleventh Amendment is not a bar.  Courts have found that requests

for the removal of a suspension in different contexts are prospective in nature.  *See Ndemenoh v.

Boudreau*, No. 20-cv-4492 (RA), 2023 WL 6122852, at *12 (S.D.N.Y. Sept. 19, 2023) (collecting

cases).

The Connecticut Defendants argue, in the alternative, that Plaintiff has not established the

constitutional requirement of standing to seek injunctive relief.  In order to establish standing for

injunctive relief, Plaintiff must at least show that "he has sustained or is immediately in danger of

sustaining some direct injury as the result of the challenged official conduct."  *Shain v. Ellison*,

356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02

(1983)).  Plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a

likelihood that he . . . will be injured in the future."  *Id.* (quoting *Deshawn E. by Charlotte E. v.

Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).  Further, the future "injury or threat of injury must be

both 'real and immediate,' not 'conjectural' or 'hypothetical,'" or abstract.  *Id.* (quoting *O'Shea v.

Littleton*, 414 U.S. 488, 494 (1974)).

The Court finds that Plaintiff's alleged injury of the continued suspension of his driving

privileges satisfies this requirement.  For similar reasons that the Court found his requests for

injunctive relief are prospective in nature, Plaintiff's injury is not a past injury, but an ongoing

one.  The Connecticut Defendants argue that the continued suspension cannot be an "injury" when

Plaintiff holds the power to remedy it by paying the unpaid fine amount.  Not only do the

Connecticut Defendants not cite any law in support of this argument, but adopting this logic would

defeat standing in any number of cases.  Plaintiff's position is that he should not be required to pay

the fine; the Connecticut Defendants cannot simply assert that Plaintiff lacks standing because has the option to pay the fine and remove the suspension.

The Court also rejects the Connecticut Defendants' apparent invocation of the "irreparable harm" standard from the preliminary injunctive context, under which courts evaluate whether there is a "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003) (citing *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)). Their argument that Plaintiff can rectify the harm himself by paying the fine—and therefore, that the injury is reparable through a monetary payment—turns the standard on its head. Even if the question of irreparable harm were relevant on a motion to dismiss, which it is not, the standard concerns whether monetary damages provided by *the defendant* could adequately compensate *the plaintiff*, not whether the plaintiff can "repair" the harm done by making his own payment.

The Connecticut Defendants also seem to alternatively characterize Plaintiff's injury as the unpaid fine amount, arguing that the amount does not suffice because it is only $210 (the $175 restoration fee and $35 fine). But there is no *de minimis* exception to cognizable injuries. *See Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 425 (S.D.N.Y. 2019). Rather, "[t]he injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). Clearly, this $210 amount suffices.

For these reasons, the Court dismisses the DMV from this suit under Rule 12(b)(1) for lack of subject matter jurisdiction without prejudice, but proceeds to consider whether Plaintiff has

stated a cognizable claim for relief against Defendant Guerrera, in his official capacity as DMV Commissioner, Defendant Meskill, in her official capacity as Deputy Attorney General, and the Doe Defendants affiliated with the State of Connecticut under Federal Rule of Civil Procedure 12(b)(6).[9]

B. Rule 12(b)(6)

The Court next addresses the Connecticut Defendants' arguments made under Rule 12(b)(6). First, the Court dismisses Defendant Meskill from this action for lack of personal involvement. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Plaintiff only alleges that Defendant Meskill did not respond to his emails on August 29 and August 30, 2023. Failure to respond to emails is insufficient to show personal involvement in the underlying due process violation alleged, the decision to hold Plaintiff's driving privileges under continued suspension. *See Owens v. Cnty. of Orange*, No. 22-CV-6754, 2023 WL 6199736, at *4 n.5 (S.D.N.Y. Sept. 22, 2023) (collecting cases for proposition that receipt of, and failure to respond to, correspondence "does not establish the personal involvement necessary to hold [defendant] liable for a constitutional violation").

In his opposition to the Connecticut Defendants' motion to dismiss (but not his FAC), Plaintiff raises the new allegation that Defendant Meskill represented the State in all relevant court

---

[9] The Connecticut Defendants recognize that Plaintiff's complaint does not implicate *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), or *Heck v. Humphrey*, 512 U.S. 477, 486 (1994)—even liberally construed. Plaintiff is neither challenging a past suspension of his driver's license nor the state court speeding conviction. Rather, Plaintiff is challenging the manner in which those orders have been executed, as he is under the impression that the suspension orders expired on August 29, 2023. Insofar as Plaintiff's claims "challenge the procedures applied . . . and seek . . . prospective relief rather than a modification of h[is] suspension or reinstatement orders, h[is] claims would not be barred by *Rooker-Feldman*" or *Heck*. *McNamara v. Kaye*, 360 F. App'x 177, 1 (2d Cir. 2009) (summary order).

proceedings.  Pl.'s Opp. Conn. Defs.' Mot. Dismiss, ECF No. 158 at 8.  But a plaintiff cannot amend his complaint through opposition to a motion to dismiss.  *See Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) (collecting cases).  Even if the Court were to consider this allegation, however, the Court questions whether the fact of legal representation at later court proceedings suffices to show personal involvement in the underlying alleged constitutional violation.  *Cf. Fletcher v. Vill. of Lake Placid*, No. 8:22-cv-00314 (BKS/DJS), 2023 WL 8573860, at *6 (N.D.N.Y. Dec. 11, 2023) (dismissing claim against town attorney alleged to have "orchestrated" town officials' corruption with other defendants, because "[t]hese allegations are not sufficient to plausibly infer their personal involvement").  Thus, Defendant Meskill is dismissed from this action.

Second, the Court dismisses the Doe Defendants for similar reasons.  While the allegations against Defendant Meskill are sparse, they are even more so against the Doe DMV Defendants. There are simply no allegations in the FAC against the Doe Defendants named.  Plaintiff only clarifies in opposition that the Doe Defendants are employees of the DMV, not members of the Attorney General's Office.  ECF No. 158 at 9.  Because there are no allegations specific to any Doe Defendants, however—whether employed by the DMV or the Attorney General's office— Plaintiffs' claims necessarily fail and must be dismissed.  *See Brock v. Acadia Network*, No. 21 Civ. 3087 (PGG) (GWG), 2023 WL 5217933, at *3 (S.D.N.Y. Aug. 14, 2023) (collecting cases dismissing Doe Defendants).

As for Defendant Guerrera, in his official capacity as Commissioner, the Court finds that Plaintiff does not plausibly allege Defendant Guerra has deprived Plaintiff of his driving privileges without due process of law under the Fourteenth Amendment of the U.S. Constitution.

A state actor may not deprive an individual of a protected property interest without due process of law.  U.S. Const. am. XIV.  This is a two-pronged inquiry.  To prevail on a procedural due process claim, an individual must first show that he or she was deprived of a constitutionally protected property interest.  *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009).  Such property interests are created by "existing rules or understandings that stem from an independent source such as state law."  *Id.* at 168–69 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  To have a constitutionally protected property interest, the plaintiff "must have had 'a legitimate claim of entitlement to it.'"  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (same).

If the plaintiff makes this showing, courts consider whether the plaintiff was afforded due process of law with respect to the deprivation of the property interest.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).  The touchstone is "the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge,* 424 U.S. 319, 348–49, (1976) (quoting *Joint Anti–Fascist Comm. v. McGrath,* 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)).  In determining whether due process was afforded, courts weigh the three *Matthews* factors:  "(1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government interest."  *Spinelli*, 579 U.S. at 170 (citing *Matthews*, 424 U.S. at 335).

The Court will assume, without deciding, that Plaintiff possesses a constitutionally protected property interest in the driver's license that was suspended.  The Second Circuit has acknowledged that, under *Bell v. Burson*, 402 U.S. 535 (1971), "a driver's license is a property interest that may not be suspended or revoked without due process."  *See Perry v. McDonald*, 280

F.3d 159, 174 (2d Cir. 2001) (cleaned up); *see also McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (summary order) (citing *Bell*, 402 U.S. at 539); *Gudema v. Nassau Cnty.*, 163 F.3d 717, 724 (2d Cir. 1998) ("It is well established that many state-created privileges, such as a license to drive, 'are not to be taken away without procedural due process required by the Fourteenth Amendment.'" (quoting *Bell*, 402 U.S. at 539)). *Bell* addressed suspension of a driver's license in the context of a clergyman whose profession required him to travel by car, and therefore may be appropriately limited to situations where the continued possession of the driver's license "may become essential in the pursuit of a livelihood," 402 U.S. at 539. And Plaintiff is careful to distinguish suspension of his *driving privileges* from suspension of a *driver's license*, *see* ECF No. 158 at 1–2. Nonetheless, the Second Circuit has not explicitly limited the application of *Bell*, and the Court will charitably assume, without deciding, that Plaintiff has plausibly alleged his driving privileges may become essential to a career in pilot instruction.

The Court declines to adopt the Connecticut Defendants' framing of the relevant question as whether Plaintiff still possesses a property right in the driving privileges now that they been suspended, rather than whether Plaintiff has a property interest in the privileges he had been issued themselves. If the Court were to adopt this framing, it would diminish a plaintiff's property interest in driving privileges or a license any time the plaintiff brings a due process claim after that license has been suspended. The cases cited by the Connecticut Defendants do not draw a distinction depending on whether the claim is brought before, or after, an issued license is suspended. Rather, they involve situations in which no license had been issued in the first place, and so the plaintiff only had an "expectation interest" in obtaining it. *See, e.g.*, *Viking Constr. Co. v. Thorne,* No. H-80-250, 1982 U.S. Dist. LEXIS 18306, at *11–12 (D. Conn. Apr. 15, 1982) ("There can be no such

concrete property interest where, in the present case, one does not yet have the license but only *hopes* to obtain it.").

Nonetheless, Plaintiff's claim fails because he does not plausibly allege that he was deprived of the property interest in the driver's license he possessed without due process of law. Plaintiff is under the mistaken belief that his unpaid fine, imposed at the April 10, 2015, re-resentencing, expires as a matter of law after seven years pursuant to Conn. Gen. Stat. § 14-140(b). Conn. Gen. Stat. § 14-140(b) provides in relevant part:

> Any infractions or violations, for which a report of failure to appear has been sent to the commissioner under this subsection, that have not otherwise been disposed of shall be dismissed by operation of law seven years after such report was sent.

This statute does not apply to Plaintiff for two reasons. First, Plaintiff does not allege, or otherwise show, that a "failure to appear has been sent to the commissioner" in relation to the imposed fine. Although Plaintiff alleges that failures to appear were sent in the past, these were only in relation to the original 2004 infraction, for which Plaintiff was eventually sentenced in 2005. The current suspension, entered after the 2015 re-sentencing, is indisputably not for failure to appear—as Plaintiff has very actively participated in the litigation concerning it—but for failure to pay the re-imposed $35.00 fine. Plaintiff simply argues that "failure to appear" should be interpreted as "failure to pay," ECF No. 158 at 10, but the two have different plain meanings.

Second, the statute does not apply because Plaintiff's speeding violation was "disposed of" when he was re-sentenced in 2015. Plaintiff would only have been able to appeal from the conviction after the "imposition of a sentence" and "final judgment." Conn. Practice Book § 61-6. And, indeed, Plaintiff pursued appeals: he appealed the resentencing decision to the Connecticut Appellate Court, which dismissed the appeal. *State v. Williams*, No. AC 37922 (Conn.

App. Ct. July 15, 2015).[10]  Plaintiff then sought certification to the Connecticut Supreme Court, which denied his request.  *State v. Williams*, No. SC 150187 (Conn. Nov. 4, 2015).[11]  Finally, Plaintiff filed a petition for writ of *certiorari* to the United States Supreme Court, but his petition was rejected for failure to comply with filing requirements.  *See* ECF No. 158 at 25; Apr. 13, 2016, Letter from Office of the Clerk.[12]  Plaintiff argues that his case has not been "disposed of" because the judicial docket for the case lists it as "pending."  ECF No. 158 at 12; ECF No. 158-4.  But it is clear that his infraction proceeded to a final, appealable judgment and was "disposed of," so § 14-140(b) does not apply here.

Even if Plaintiff's interpretation of Conn. Gen. Stat. § 14-140(b) was correct, though, the Court questions whether Plaintiff plausibly alleged a *procedural due process* claim, rather than a violation of Conn. Gen. Stat. § 14-140(b) itself, which may or may not create a private cause of action.  To succeed on his procedural due process claim, Plaintiff would need to plausibly allege that the process undertaken by the DMV to suspend his driving privileges and maintain them under indefinite suspension for failure to pay a duly-imposed fine, is insufficient.  The Court cannot find that it does.

Applying the three *Matthews* factors, an individual's interest in being able to drive is no doubt important under the first factor, as is the State's interest in enforcing its imposed fines under the third factor.  Nonetheless, Plaintiff simply does not allege that, under the second *Matthews* factor, any pre-deprivation or post-deprivation procedures were inadequate.  Indeed, Plaintiff has fully utilized the administrative process in place to challenge the suspension.  Rather, Plaintiff

---

[10] https://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=51698&Type=AppealNo (last visited July 3, 2024).
[11] https://appellateinquiry.jud.ct.gov/CaseDetailPreAppeal.aspx?CRN=52543&Type=AppealNo (last visited July 3, 2024).
[10] This letter is available at page 196 to 197 in link at footnote 2.

appears to challenge the *consequence* of the deprivation, not the *process*.  Further, liberally construing Plaintiff as bringing a substantive due process claim, the Court cannot find that the State's holding of driving privileges in indefinite suspension over the enforcement of a duly imposed, modest fine is an "arbitrary" or "wrongful" act, "regardless of the fairness of the procedures used to implement [it]."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting, third, *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  For these reasons, the Court finds that Plaintiff has failed to plausibly allege a due process claim against the Connecticut Defendants under the Fourteenth Amendment.

The Court notes that Plaintiff's FAC does not specify what exact constitutional provisions (or state law claims) he brings against the Connecticut Defendants.  Rather, Count Five is only titled "42 U.S.C. § 1983 and state law claims," and Plaintiff also references the First, Fifth, Sixth, and Eighth Amendments earlier in passing in his FAC, without any supporting factual allegations.  FAC ¶¶ 17, 127–28.  In his opposition to the motion to dismiss, Plaintiff claims there are "numerous other constitutional rights at issue," such as his right to travel and his right to pursue gainful employment.  ECF No. 158 at 7–8.  As these theories are found nowhere in the FAC, and as Plaintiff has not plausibly alleged any claims under the First, Fifth, Sixth, or Eighth Amendments, the Court dismisses them.  Plaintiff's claims against the Connecticut Defendants are therefore dismissed in their entirety.

## V.    FEDERAL DEFENDANTS' MOTION TO DISMISS

The Court next turns to Plaintiff's claims against the Federal Defendants.  Plaintiff's claims fall into three general categories:  for unreasonable delay in the FAA's administration of Plaintiff's practical flight test; for an order that the FAA is prevented from prohibiting his enrollment in private training courses; and that five documents issued by the FAA related to flight instruction

represent substantive rule changes that are invalid for failure to undergo notice-and-comment rulemaking.

The Court first finds that it lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) over Plaintiff's unreasonable delay claim, private training course claim, and claims regarding two of the five FAA documents.  As for the remaining claims concerning the Guide for Aviation Medical Examiners and the 2011 Gatlin and 2018 Williams legal interpretations, such claims fail under Federal Rule of Civil Procedure 12(b)(6).

A.  Rule 12(b)(1)

*1.  Unreasonable Delay Claim*

Initially, Plaintiff asserts claims under the APA and Mandamus Act relating to what he alleges is the Federal Defendants' unreasonable delay in administering the practical flight test, which would allow him to obtain the flight instructor certification he seeks.

The APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Section 706(1) of the APA permits federal courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).[13]  An unreasonable delay claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  After finding that a nondiscretionary duty is at issue, courts "look to the source of delay—e.g., the complexity of the [agency action] as well as the extent to which the defendant participated in delaying the proceeding."  *Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999).  In assessing whether the agency has unreasonably delayed an action, courts in the

---

[13] Unlike the Mandamus Act, the APA does not alone provide a federal court with jurisdiction.  *See Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 543 (S.D.N.Y. 2008) (citing *Califano v. Sanders*, 430 U.S. 99, 106–07 (1977)).

Second Circuit apply the six factors set forth by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir.1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action or agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009) (citing the *TRAC* factors, cleaned up); *see also Nat'l Resources Def. Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013) (noting that *TRAC* sets forth the test for determining if agency action is unreasonably delayed).

As for issuance of a writ of mandamus under the Mandamus Act, there are three elements: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (internal quotation marks and citations omitted). Mandamus relief is only warranted if the plaintiff identifies a "clear nondiscretionary duty" on the part of the agency. *Id.*; *see also Nigmadzhanov*, 550 F. Supp. 2d at 543 ("The court's power depends on the nature of the duty sought to be compelled: relief 'will issue only to compel the performance of a 'clear nondiscretionary duty.'" (quoting *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988)).

The Federal Defendants move to dismiss Plaintiff's unreasonable delay claim for lack of standing. The Federal Defendants focus on the fact that, besides the practical test, two other

impediments stand in the way of Plaintiff obtaining the desired certification: possession of a current logbook endorsement and a current "knowledge report." Plaintiff had both of these things when he first filed this suit, but both have since expired. FAC ¶¶ 48–49. As Plaintiff cannot meet these other prerequisites, the Federal Defendants argue, he fails to allege an ongoing injury sufficient to confer Article III standing. *See* ECF No. 150-1 at 6.

The doctrine of standing is "rooted in the traditional understanding of a case or controversy" and serves to "ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). To establish Article III standing, a plaintiff must demonstrate "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Another requirement of Article III justiciability is that "a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). Ripeness presents a "question of timing"; a claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (2d Cir. 1985) (internal quotation marks and citation omitted). Ripeness relates to the first prong of the standing inquiry: "to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent' but instead 'conjectural or hypothetical.'" *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 (quoting *Lujan*, 504 U.S. at 560).

The Court concludes that Plaintiff's claim for unreasonable delay of the flight test is unripe. The injury Plaintiff claims in the FAC is the inability to be able to obtain the certified flight instructor certification. Plaintiff had alleged in his original complaint that he had met all of the prerequisites to take the flight test, which is the last requirement for the certification. *See* Compl., ECF No. 1 ¶ 15. At the time his complaint was filed, then, it was ripe. But other events occurring since the filing of his complaint now stand in his way: both Plaintiff's instructor's logbook endorsement and knowledge test report results, which are prerequisites to taking the flight test, have since expired. FAC ¶¶ 48–49. Moreover, Plaintiff no longer possesses the medical certificate required to pilot an aircraft. *Id.* ¶¶ 97–100. As a result, Plaintiff's claim hinges on contingent events that may or may not occur—Plaintiff's obtaining of a current logbook endorsement and knowledge test report, and a medical certificate (or its substitute). His claim is therefore unripe.

Although Plaintiff's claims are not ripe today, the Court acknowledges "that they someday might be" if Plaintiff renews his eligibility. *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688, n.5. But at present, the injury Plaintiff asserts—the Federal Defendants' failure to schedule the practical test—is not actual or imminent, given that he does not satisfy the other prerequisites for taking the test. Rather, it is conjectural or hypothetical because he is presently ineligible and there is no basis to conclude he will become eligible in the near future. *See id.* at 688 (quoting *Lujan*, 504 U.S. at 560).

Plaintiff suggests, without citation to any authority, that the Court could simply disregard these prerequisites for his particular case; the Court declines to do so. This implicates the agency's expertise in, and Congressional delegation of authority over, flight safety. At most, the APA permits federal courts to order a federal agency's "unlawfully withheld or unreasonably delayed"

action, 5 U.S.C. § 706.  As Plaintiff has not established the Article III justiciability for his claim of unreasonable delay, the Court will not issue such an order.

Separately, Plaintiff has failed to identify a clear nondiscretionary duty owed him by the FAA, which is a jurisdictional requirement to bring a claim under the Mandamus Act.  Quite simply, there is no nondiscretionary duty that the FAA administer a test when Plaintiff is not eligible (or that it reinstate his required prerequisites).  Plaintiff cites to 49 U.S.C. § 44702(a) for the proposition that the FAA is responsible for issuing airman certificates.  *See* ECF No. 173 at 2.  The fact that § 44702(a) provides the Administrator of the FAA the authority to issue airman certificates is plainly different from a requirement that the FAA conduct practical tests, within a specified period of time, to all individuals who are eligible.

For these reasons, the Court denies Plaintiff's unreasonable delay claims under the APA and Mandamus Act for lack of standing.

### 2.  Enrollment in Private Courses

Plaintiff does not respond to the Federal Defendants' arguments for dismissal of his claim that the FAA permit him to enroll in private courses for lack of standing.  This claim appears to be intertwined with the now-dismissed claims against Carol Ceccone Carpenter and Brian Carpenter, who ran the courses through their company Rainbow Aviation Services.  Indeed, in Count Three of the FAC, Plaintiff only states that he seeks an order generally "to compel Defendants to enroll Plaintiff in the [parachuting] course."  FAC ¶ 121.  It is possible this claim was not meant to be alleged against the Federal Defendants at all, but rather the Carpenter Defendants only.   Earlier, in the complaint, however, Plaintiff states that he "seeks an order preventing the FAA from prohibiting his enrollment in Rainbow Aviation Services' add-on courses."  *Id.* ¶ 6.   Therefore, for the sake of completeness, the Court addresses this claim.

The Court agrees that this challenge is likewise unripe.  *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687.  The only allegation that involves the FAA is that Carol Carpenter informed Plaintiff that "[i]f [the FAA supervisor] does not approve [the courses], he will absolutely not let us put anyone in the class that has not taken our 120 hour course."  FAC ¶ 64.  Plaintiff also alleges that "[a]pproval for that course is currently pending."  *Id.*  Based on these allegations, it is entirely speculative whether the FAA will or will not approve the course, and therefore, whether Plaintiff may or may not be prohibited from taking it.  This claim is therefore dismissed.

### 3.  *Documents and Legal Interpretations*

Next, Plaintiff argues that the following five documents issued by the FAA represent substantive rule changes that are invalid for failure to undergo notice-and-comment rulemaking: (i) the FAA's Practical Test Standards, (ii) Airman Certification Standards, (iii) the Guide for Aviation Medical Examiners, (iv) the 2011 Gatlin legal interpretation, and (v) the 2018 Williams legal interpretation.

Initially, Plaintiff concedes that his claims concerning the first two documents—the FAA's Practical Test Standards and Airman Certification Standards—are moot now that the FAA has issued a final rule, effective May 31, 2024, that incorporated those standards.  *See* 89 Fed. Reg. 22482 (Apr. 1, 2024); Pl.'s Resp. Fed. Defs.' Not., ECF No. 210.[14]  The Court therefore only considers whether it has jurisdiction to hear claims regarding the remaining three.

---

[14] Specifically, Plaintiff concedes that 89 Fed. Reg. 22482 "moots [his] argument as regards the FAA Pilot Test Standards and Airman Certification Standards included by reference in that regulation."  ECF No. 210 at 1.  The regulation fairly encompasses all Practical Test Standards challenged by Plaintiff in his fourth amended complaint, including those related to commercial helicopters/gyroplanes, from paragraphs 68 to 81.  *See, e.g.*, 89 Fed. Reg. 22482, 22488 (listing Practical Test Standards involving gyroplanes), 22499 (referencing the "Commercial Helicopter ACS adopted in this final rule").  Plaintiff correctly notes that the regulation does not incorporate the FAA's Guide for Aviation Medical Examiners, and thus that specific claim remains live.  ECF No. 210 at 2.

*a. District Court Jurisdiction*

Congress has passed several statutes which limit federal district courts' jurisdiction to hear claims regarding the actions of a federal agency.  Relevant here, Section 46110 of the Federal Aviation Act provides that only a United States Court of Appeals may exercise judicial review over an "order" issued by the FAA:

> [A] person disclosing a substantial interest in an order issued by the . . . Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a); *see also id.* § 46110(c) (providing that the grant of jurisdiction is exclusive to courts of appeal).  Although the word "order" is not defined in the statute, the term is to be given "liberal construction" for § 46110(a) purposes.  *New York v. FAA*, 712 F.2d 806, 808 (2d Cir. 1983); *see also Griggs v. LaHood*, 770 F. Supp. 2d 548, 553 (E.D.N.Y. 2011) (recognizing that circuit courts have interpreted "order" "broadly to encompass any final, non-rulemaking decision issued by an agency") (collecting cases).   The Second Circuit has looked to the APA's definition of "order," which is "the whole or a part of a final disposition . . . of an agency in a matter other than rule making."  *Paskar v. U.S. Dep't of Transp.*, 714 F.3d 90, 96 (2d Cir. 2013) (quoting 5 U.S.C. § 551(6)).  "A 'final order' must satisfy two criteria:  the agency action must mark the 'consummation of the agency's decision process,' and the action 'must be one by which rights and obligations have been determined, or from which legal consequences will flow.'"  *Paskar*, 714 F.3d at 96 (quoting *Bennett v. Speer*, 520 U.S. 154, 177–78 (1997)).

By "vest[ing] judicial review of administrative orders exclusively in the courts of appeals," the statute "also preclude[s] district courts from hearing claims that are 'inescapably intertwined'

with review of such orders." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) (citation omitted). "A claim is inescapably intertwined in this manner if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order." *Id.* (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)).

The Court finds that the Guide for Aviation Medical Examiners ("the Guide"), the 2011 Gatlin legal interpretation, and the 2018 Williams legal interpretation are not "orders" that are exclusively reviewable by the courts of appeal.

To begin, the FAA's website describes the Guide as a document "provid[ing] pertinent information and guidance needed to perform the duties and responsibilities of an Aviation Medical Examiner."[15]   According to the FAA's website, the Guide is updated frequently:  the last Wednesday of each month.[16]   Because it is continually updated, the Court is hard-pressed to find that it should be considered a final order of the FAA.  *See Paskar*, 714 F.3d at 96.  And while it purports to describe the "Legal Responsibilities of Designated Aviation Medical Examiners," *see* FAA, Airman Medical Examiners Guide at 9 (April 24, 2024), https://www.faa.gov/ame_guide/media/ame_guide.pdf,[17] it is not clear that any legal consequences would flow from an individual's failure to abide by the Guide itself, as opposed to the regulations cited within the Guide.  Indeed, in the Court's review, there is no indication that failure to comply with the Guide *alone* would result in any legal consequence.  For instance, while the Guide provides that the FAA could revoke or suspend a medical certificate that was improperly issued, that requirement appears to come from federal regulations.  *See, e.g.*, 14 C.F.R. §§

---

[15] https://www.faa.gov/ame_guide (last visited July 3, 2024).
[16] https://www.faa.gov/ame_guide (last visited July 3, 2024).
[17] The Federal Defendants cite a January 2023 version of the Guide, ECF No. 150 at 15, but the two versions appear similar in the material respects.

67.403(b), 67.413(b).  While there is no requirement, as Plaintiff argues, that he be a "party" to the Guide for it to be an "order" for purposes of § 46110(a), the Court cannot conclude that it "imposes tangible, definite, and immediate legal consequences" that would make it a final order reviewable only by a court of appeals.  *Paskar*, 714 F.3d at 97.

Likewise, the two legal interpretations letters challenged by Plaintiff are not final orders for purposes of § 46110(a).  "Legal Interpretations" are letters issued by the FAA's Office of the Chief Legal Counsel upon request by a member of the public for a statement on a "novel or legally significant issue."  *See* FAA, Interpretations Search:  Legal Interpretations & Chief Counsel's Opinions.[18]  The 2010 Gatlin legal interpretation is a September 24, 2010, letter from the then-Assistant Chief Counsel for Regulation to an individual named Stephen Gatlin.  FAA, Sept. 24, 2010, Gatlin Legal Interpretation.[19]  Gatlin had inquired whether an advanced ground instructor or instrument ground instructor is an "Authorized Instructor" as defined in 14 C.F.R. § 61.1(b)(2), such that they may provide instrument instruction in a flight simulator, to which the FAA answered no.  *See id.*  The 2018 Williams legal interpretation is a similar September 25, 2018, letter sent to an individual named Lawrence Williams.  FAA, Sept. 25, 2018, Williams Legal Interpretation.[20]  Williams inquired, in relevant part, whether a flight instructor is required to hold a medical certificate (which Plaintiff lacks) when either providing training in a multiengine aircraft, or to a certified pilot who is seeking to add an instrument rating.  *Id.* at 1–2.  On the first question, the FAA answered no, unless the instructor was operating under the requirements of a program called

---

[18] A database of the FAA's past legal interpretations are available at:
https://www.faa.gov/about/office_org/headquarters_offices/agc/practice_areas/regulations/interpretations (last accessed July 3, 2024).

[19] The 2010 Gatlin legal interpretation is available on the FAA's website at:
https://www.faa.gov/about/office_org/headquarters_offices/agc/practice_areas/regulations/interpretations/Data/interps/2010/Gatlin_2010_Legal_Interpretation.pdf (last accessed July 3, 2024).

[20] The 2018 Williams legal interpretation is similarly available:
https://www.faa.gov/about/office_org/headquarters_offices/agc/practice_areas/regulations/interpretations/Data/interps/2018/Williams_2018_Legal_Interpretation.pdf (last accessed July 3, 2024).

BasicMed. *Id.* at 2.  On the second, the FAA stated "[i]t is unnecessary to interpret" this issue because such a scenario would violate other FAA regulations.  *See id.* at 2.

The Court cannot find that either legal interpretation is final or represents the imposition of legal responsibilities, rather than a simple explanation of the state of the law.  The letters do not clearly create or set forth any change in the law.  *See Paskar*, 714 F.3d at 97 (collecting cases where letters set forth changes in agency position).  For example, the 2010 Gatlin legal interpretation confirms for Mr. Gatlin that an interpretation previously provided "by the FAA designee is correct."  Gatlin Legal Interpretation at 2.  The 2018 Williams legal interpretation seeks guidance on two specific, hypothetical scenarios and even declines to comment on one. Williams Legal Interpretation at 2.  The letters are plainly distinguishable from the letter in *Griggs*, which informed the plaintiff that cancellation of his authority to operate as a designated aircraft dispatcher examiner had been affirmed.  770 F. Supp. 2d at 552.  That letter represented the "final revocation of delegated authority" and thus clearly affected rights and responsibilities.  *See id.* at 553.  Although the interpretation letters considered "orders" in *Flytenow, Inc. v. F.A.A.*, 808 F.3d 882, 888 (D.C. Cir. 2015), are somewhat more analogous to those here, the Court does not find the case persuasive as the FAA specifically disclaimed any "non-finality bar" to review by the U.S. Court of Appeals for the D.C. Circuit, and therefore the issue was not contested.  *Id.*

For these reasons, the Court finds that the claims regarding the Practical Test Standards and Airman Certification Standards are moot, and that it has jurisdiction to examine the merits of Plaintiff's claims regarding the Guide, the 2010 Gatlin legal interpretation and 2018 Williams interpretation below.

B.  Rule 12(b)(6)

The Court dismisses Plaintiff's claims that the Guide, the 2010 Gatlin legal interpretation, and 2018 Williams legal interpretation are invalid for failure to undergo notice and comment rulemaking, because they are interpretative rules not subject to that requirement.

The APA generally requires that before an agency issues a rule, it engages in what is known as "notice-and-comment" rulemaking.  Through this process, the agency provides the public with both "[g]eneral notice of the proposed rule" and "an opportunity to participate in the rule making through submission of written data, views, or arguments."  *See* 5 U.S.C. § 553(b), (c).  Notice-and-comment rulemaking "serve[s] the public interest by providing a forum for the robust debate of competing and frequently complicated policy considerations."  *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 115 (2d Cir. 2018).  There is a statutory exception from the process, however, when the rule in question is "interpretative" in nature, [21] rather than "legislative."  *Sweet v. Sheahan*, 235 F.3d 80, 90 (2d Cir. 2000) (citing 5 U.S.C. § 553(b)(A)).[22]

The Second Circuit has elaborated on the distinction between interpretative rules and legislative rules subject to notice-and-comment rulemaking.  Legislative rules are those that "create new law, rights, or duties, in what amounts to a legislative act."  *Sweet*, 235 F.3d at 91 (quoting *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993)).  By contrast, interpretative rules "clarify an existing statute or regulation."  *White*, 7 F.3d at 303.  Interpretative rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."  *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (quoting *Chrysler Corp.*

---

[21] Section 533(b)(A) also exempts "general statements of policy, or rules of agency organization, procedure, or practice" from notice-and-comment rulemaking.  As the Federal Defendants only advance the argument that the legal interpretations are interpretative rules, the Court does not address whether they fall into the other categories.

[22] Although the APA refers to them as "substantive" rules, the Second Circuit and other courts have adopted the phrase "legislative" to avoid confusion.  *See Sweet*, 235 F.3d at 90 n.7.

*v. Brown*, 441 U.S. 281, 302 n.31 (1979)).   The Second Circuit has endorsed the four factors relevant to this determination set forth by the D.C. Circuit in *American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106 (D.C. Cir. 1993):

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule.

*See Sweet*, 235 F.23d at 91 (quoting *Am. Mining*, 995 F.2d at 1112).   District courts within the Second Circuit have considered these factors in distinguishing between interpretative and legislative rules.   *See, e.g.*, *Bagnall v. Sebelius*, No. 3:11cv1703 (MPS), 2013 WL 5346659, at *13–14 (D. Conn. Sept. 23, 2013), *abrogated on other grounds by Barrows v. Burwell*, 777 F.3d 106 (2d Cir. 2015); *Make the Road New York v. Pompeo*, 475 F. Supp. 3d 232, 263 (S.D.N.Y. 2020); *Gill v. Paige*, 226 F. Supp. 2d 366, 374–75 (E.D.N.Y. 2002).

For largely the same reasons that the Court found that the Guide, the 2010 Gatlin legal interpretation, and 2018 Williams legal interpretation are not "final orders," the Court finds that they are all interpretative rules exempt from notice-and-comment rulemaking.

Regarding the Guide, as the Court has explained above, it is not apparent that the Guide itself has any legal force in and of itself; to the extent the requirements set forth in the Guide are legally enforceable, it is because those requirements are separately set forth in federal regulations. Plaintiff does not argue (and the Court cannot find, based on its own research) that the FAA has published the Guide in the Code of Federal Regulations; nor has the FAA explicitly invoked its general legislative authority in making the Guide available.   The Guide does not appear to

effectively amend a prior legislative rule.  The Guide is therefore properly considered an interpretative rule.  *See Am. Mining*, 995 F.2d at 1112.

As for the legal interpretation letters, FAA interpretation letters are often "quintessential" examples of interpretative rules as they are "issued by [the] agency to advise the public of the agency's construction of the statutes and rules it administers."  *Flytenow, Inc.*, 808 F.3d at 889 (quoting, second, *Shalala*, 514 U.S. at 99).

Beginning with the 2010 Gatlin legal interpretation, the letter was drafted to clarify that an advanced ground instructor or instrument ground instructor is not an "Authorized Instructor" as defined in 14 C.F.R. § 61.1(b), such that they may not provide instruction in a flight simulator.  Under the first *American Mining* factor, 14 C.F.R. § 61.215 appears to provide a basis for agency enforcement or action absent this letter, as it contains an exhaustive list of ground instructors' privileges, which do not include instruction in a flight stimulator.  *See* 2010 Gatlin Letter at 2.  There is no dispute that, under the second and third *American Mining* factors, the FAA did not publish this letter in the Code of Federal Regulations nor that the agency invoked its legislative authority in issuing it.  *Compare Sweet*, 235 F.3d at 92 (finding that published regulations were legislative rules when they were promulgated pursuant to the explicit statutory mandate).  Rather, the agency explicitly stated that it was providing a legal interpretation.  *See* 2010 Gatlin Letter at 2 (concluding that a prior "interpretation of the regulations by the FAA designee is correct").

Last, the Court is hard pressed to find that the letter is an effective amendment of a prior legislative rule under the fourth *American Mining* factor when, at most, the relevant regulation is silent on the issue.  Plaintiff claims it is a departure from the 1980 Ruth legal interpretation, but that interpretation does not squarely address the question.  Rather, it describes the regulatory scheme concerning "the crediting of flight instruction in a simulator toward required flight

instruction" and, in doing so, states in passing that a ground instructor with an instrument ground instructor rating may provide instruction in a simulator.  FAA, Legal Interpretation 1980-8, 1980 WL 570339 at *1 (Feb. 28, 1980).  More significantly, there is no basis to conclude the 1980 Ruth legal interpretation has been enforced as a legislative rule in the thirty years between its issuance and the 2010 Gatlin legal interpretation, such that the 2010 Gatlin legal interpretation was then an effective amendment.  For these reasons, the weight of the *American Mining* factors support the conclusion that the 2010 Gatlin legal interpretation did not amount to a legislative act, but rather clarified an existing regulation.

Second, Plaintiff does not respond to the Federal Defendants' arguments for dismissal of the claim concerning the 2018 Williams legal interpretation, and intends to abandons this claim.  *See* ECF No. 173 at 9–10 (addressing the Guide and 2010 Gatlin legal interpretation, but not the 2018 Williams legal interpretation); Pl.'s Mot. Amend, ECF No. 196 at 4 (indicating that Plaintiff seeks to remove this claim).  For the sake of completeness, the Court agrees the 2018 Williams legal interpretation is also an interpretative rule that clarifies flight instructors' privileges under applicable regulations.  Under the first *American Mining* factor, the letter almost verbatim repeats the requirements from 14 C.F.R. § 61.113(i) for operating under the Basic Med program, and describes how operating an aircraft in the proposed manner would violate separate regulations providing a basis for agency action, 14 C.F.R. §§ 61.113(i) and 90.109(a).  Again, there is no dispute that the FAA did not publish the letter in the Code of Federal Regulations nor that it was not promulgated pursuant to statutory authority under the second and third factors.  Finally, Plaintiff does not identify, nor has the Court been able to locate, any prior legislative rule that this legal interpretation may have effectively amended. Thus, the Court concludes that the 2018

Williams letter is similarly an interpretative rule under the *American Mining* factors, and was not subject to notice-and-comment rulemaking requirements.

For these reasons, the Court dismisses Plaintiff's final remaining claims concerning the Guide, the 2011 Gatlin legal interpretation and 2018 Williams legal interpretation under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## VI.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND

The Court now addresses Plaintiff's pending motion for leave to amend and the attached proposed sixth amended complaint, ECF No. 196.[23]  For the following reasons, the Court denies Plaintiff leave to file the proposed sixth amended complaint, but grants him leave to file a seventh amended complaint related to his First Amendment claim against the Federal Defendants only.

Plaintiff is not entitled to amend his operative FAC as a matter of right under Federal Rule of Civil Procedure 15(a)(1) because more than 21 days have passed since serving it, and from service of the Defendants' responsive pleadings under Rule 12(b).  Federal Rule of Civil Procedure 15(a)(2) provides that, in all other instances, leave to amend "should [be] freely give[n] when justice so requires." Although leave to amend generally is freely given, a court may properly deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment is considered "futile" if the amendment fails to state a claim or would be subject to a successful motion to dismiss on some other basis.  *See Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002).  A proposed amendment would be futile, for example, if it "destroyed the Court's subject matter jurisdiction, failed to state a claim,

---

[23] The Court previously denied Plaintiff's motion for leave to file his proposed fifth amended complaint, as the motion failed to comply with the Local Rules.  *See* Order, ECF No. 175.

or asserted claims which are time-barred by the relevant statutes of limitation." *Faryniarz v. Ramirez,* 62 F. Supp. 3d 240, 249–50 (D. Conn. 2014).

In the proposed sixth amended complaint, Plaintiff endeavors to remove since-dismissed Defendants Daryl Norval Smith, Carol Ceccone Carpenter, and Brian John Carpenter and related claims; dismiss Defendant DMV; substitute both Defendant Trottenberg and Defendant Bush with Michael Gordon Whitaker and Nicholas Albert Eull, respectively, to reflect FAA personnel changes; remove his count seeking an order of mandamus; remove the claim regarding the 2018 Williams legal interpretation; add a First Amendment claim; add a "capable of repetition yet evading review" claim; and otherwise generally bolster his factual allegations. *Id.* at 4.

Several of the above proposed amendments are not futile, but unnecessary. First, the Court has already dismissed Smith, Carol and Brian Carpenter, and (now in this ruling) the DMV from this action, as well as the mandamus claim and the claim concerning the 2018 Williams legal interpretation; Plaintiff does not need leave to amend his complaint to achieve this. Second, Federal Rule of Civil Procedure 25(d) automatically substitutes public officers who are sued in their official capacity, like the FAA Administrator and FAA Bradley Office manager, who are replaced while an action is pending.

Next, there are no additional allegations that can remedy the deficiencies with Plaintiff's claims. Plaintiff's proposed allegations do not address the fundamental defect with his procedural due process claim: that, under the plain text of Conn. Gen. Stat. § 14-140(b), his fine is *not* dismissed as a matter of law after seven years. Any allegations to "bolster" this claim are accordingly futile. Similarly, the defects with Plaintiff's unreasonable delay claim, request for mandamus, and claims concerning the five FAA documents are legal in nature and would not be remedied by an amended complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

(recognizing that although *pro se* litigants should ordinarily be given leave to replead, leave can be denied if "the problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it").  Plaintiff's claims concerning the practical test and enrollment in private courses, dismissed today on ripeness grounds, theoretically may become justiciable at some point in the future.  But this is contingent on a change of circumstances; it is not a problem that may be solved by "better pleading."  *Id.*[24]

The Court also denies Plaintiff leave to amend to include his new First Amendment claim as framed in the proposed sixth amended complaint as futile.  Plaintiff simply alleges that "speech is at the core of flight instruction and speech is clearly protected by the First Amendment." Proposed Sixth Am. Compl., ECF No. 196-1 ¶ 42.  Plaintiff has proffered no allegations from which the Court could conclude his First Amendment rights have plausibly been violated by the FAA's regulations or by any Federal Defendant specifically.  A single conclusory sentence does not suffice, even if the Court were to afford Plaintiff the special solicitude afforded *pro se* plaintiffs. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).[25]

The Court notes that the First Amendment claim that Plaintiff purports to bring is not based on previously unknown facts; indeed, Plaintiff does not seek to add *any* new facts—only a new, one-line constitutional theory based on facts that have been present since he filed his initial complaint in December of 2022.  Plaintiff has had several opportunities to advance this theory in his prior amendments, which the Court has liberally granted. *See, e.g.*, ECF No. 72 (July 17, 2023, order allowing Plaintiff to file a second amended complaint); ECF No. 80 (September 25, 2023,

---

[24] Plaintiff also purports to add a claim for "capable of repetition, yet evading review."  ECF No. 196 at 4.  This is an exception to the mootness doctrine, however, not a standalone claim. *See Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001).

[25] For similar reasons, Plaintiff has not plausibly alleged any of the other constitutional rights Plaintiff mentions in passing in Paragraph 42 of the proposed sixth amended complaint.

order allowing him leave to file a third amended complaint); ECF No. 85 (October 2, 2023, order noting that Plaintiff filed a fourth amended complaint without seeking leave, but permitting amendment under Rule 15 and warning Plaintiff that "the Court is unlikely to look favorably upon future requests to amend absent a situation where justice requires the amendment").  Following Defendants' submissions of motions to dismiss the fourth amended complaint, Plaintiff nonetheless moved for leave to amend to file the proposed fifth amended complaint, ECF No. 174, and now seeks to file a sixth amended complaint.  As noted above, Plaintiff is an attorney—albeit a suspended one—and is not entitled to the same solicitude afforded an ordinary *pro se* litigant.

Nonetheless, while the Court is sympathetic to the Federal Defendants' arguments that they are prejudiced by allowing *any* amendment to add a First Amendment claim at this juncture, the Court will allow Plaintiff leave to file a seventh amended complaint to attempt to state a plausible First Amendment claim.  This is the Court's typical practice, consistent with Second Circuit precedent holding that if a potential pleading deficiency—as opposed to a substantive deficiency— is the cause of the dismissal, leave to amend is appropriate.  *See Cuoco*, 222 F.3d at 112.  As the First Amendment claim in the proposed sixth amended complaint suffers from a pleading deficiency, Plaintiff will be given one last chance to attempt to state a cognizable First Amendment claim.  Importantly, leave to amend is granted *only* as to the First Amendment claim against the Federal Defendants; Plaintiff should not seek to resurrect any claim that this ruling has determined is substantively unviable.

## VII.   REMAINING MOTIONS

Having dismissed Plaintiff's FAC in its entirety, and granted Plaintiff one additional opportunity to state a First Amendment claim against the Federal Defendants only, the Court address the following pending motions.

Because the Court has found that Plaintiff has failed to state a plausible claim against the Connecticut Defendants and has denied leave to amend the claims against those Defendants, the Court denies as moot Plaintiff's motion for partial summary judgment that the Connecticut Defendants have wrongfully denied Plaintiff his ability to operate a motor vehicle in the State, ECF No. 98; Plaintiff's motion for a preliminary injunction on this claim, ECF No. 112; Plaintiff's motion for a determination on that motion for a preliminary injunction, ECF No. 186; and Plaintiff's motion to compel discovery responses from the Connecticut Defendants, ECF No. 214.

The Court denies as moot Plaintiff's motion to lift the stay of discovery that has been entered with respect to the Federal Defendants, ECF No. 215, given that the Court has dismissed the operative complaint against them.  Plaintiff may renew the motion if he files a seventh amended complaint.

## VIII.   CONCLUSION

For the reasons discussed above, the Court GRANTS the Connecticut Defendants' and Federal Defendants' motions to dismiss, ECF Nos. 116, 150.  Plaintiff's motion for leave to file the proposed sixth amended complaint, ECF No. 196, is DENIED, but Plaintiff is granted leave to file a seventh amended complaint stating a First Amendment claim against the Federal Defendants. Any such seventh amended complaint must be filed by **July 17, 2024**.

Plaintiff's motion for partial summary judgment, ECF No. 98; motion for a preliminary injunction, ECF No. 112; motion for a determination, ECF No. 186; motion to compel, ECF No. 214; and motion to lift stay of discovery, ECF No. 215, are DENIED AS MOOT.

The Clerk of Court is directed to terminate the Connecticut Defendants from this action.

**SO ORDERED** at Hartford, Connecticut, this July 3rd, 2024.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE